ISRAEL CASEY, Respondent, v. HENRY M. JANES Appellant.

*Assignment for benefit of Creditors—Good faith.*

The finding by the referee that the assignor, in making the assignment, had no actual design to defraud his creditors, but intended to apply his property to the payment of his debts, preferring and securing his sureties and endorsers, is a sufficient finding, in the language of the statute, that it was made in good faith, and without any intent to hinder, delay or defraud creditors.

Where the substantial findings of the referee show the assignment to be made in good faith and for a lawful purpose, it may be sustained.

THIS is an appeal by the Defendant from a judgment of the Supreme Court, in the Seventh District, in favor of the Plaintiff.

This action was brought to recover the possession of certain goods which had formerly belonged to one John P. Casey, and which the Defendant had levied upon under an execution against said John P. Casey, after the latter had executed a general assignment to the Plaintiff, in trust for creditors.

The complaint stated that, on the 25th day of January, 1858, the Defendant became possessed of certain personal property of the Plaintiff, to the value of $999.15, of which he claimed a return. The answer was—first, a general denial; and by way of second defence, set out a judgment recovered by Happock and others, on the 31st day of December, 1857, against John P. Casey, an execution thereon to the Sheriff of Livingston, its delivery to the Defendant or his deputy, and the taking of the property thereunder, being the same goods and detention in the complaint mentioned.

The issues thus made were, by order of the Court, referred for trial, and were tried before the referee, July 15, 1859, when he found the following facts:

That, prior to December 18, 1857, John P. Casey was a merchant, selling goods, and largely indebted. That on that day he assigned all his property, including debts due him, to his father, the Plaintiff herein, save so much as the law exempted from exe-

cution, in trust, to sell the property and collect the debts, and from the proceeds of such sale and collections pay costs and expenses, certain preferred debts, and afterwards the residue of the indebtedness.

That the goods were worth about $1,500, and the debts and demands due the assignor amounted to over $3,000. That the assignment was executed at the store of John, in the presence of the Plaintiff, who accepted the same in writing. That the goods were not removed, but the assignor left the store, *declaring that he surrendered the possession of the store to the assignee.* That the assignor returned to the store, after an absence of two or three hours, when the Plaintiff delivered him the keys, and directed him to take charge of the same.

That the notes and accounts were taken to the house of the assignee, immediately after the assignment, and remained there one or two days, when they were brought back to the store.

That the goods remained in the store, in charge of the assignor, who was appointed an agent, as aforesaid; the said Plaintiff being often in the store, and occasionally examining the books and accounts.

That the Defendant, as Deputy Sheriff, took them by virtue of an execution, as alleged in the answer. That the said John P. Casey had no actual design to defraud his creditors by making the assignment.

As conclusions of law, the referee found—

1. That the title of the said goods and personal property, so seized and taken by the Defendant, was in the Plaintiff, and that he was entitled to the possession thereof.

2. That the Plaintiff have judgment for the possession of said property.

Exceptions were duly taken to the referee's report; and judgment upon this report was entered March 10, 1860, that the Plaintiff have a return of the property, and costs.

The Defendant appealed to the General Term of the Supreme Court, where, in December, 1860, the judgment was affirmed, and from that decision an appeal was taken to this Court.

*George F. Danforth* for Appellant.
*James Wood* for Respondent.

MILLER, J.—It is insisted by the counsel for the Defendant, that the findings of facts by the referee do not warrant his conclusions of law. The ground upon which this position is based is, that the Plaintiff, as assignee, could acquire no title under the assignment as against a judgment-creditor, unless, in accordance with the provisions of the Revised Statutes (2 R. S. 136, § 5), it was accompanied by an immediate delivery, and followed by an actual and continued change of possession of the property in question, or unless it was made to appear on the part of the assignor that it was made in good faith, and without any intent to defraud creditors; and that neither of these facts are found by the referee.

I think that the finding of the referee substantially covers the ground of the objection, and was sufficient.

He found that the assignor had no actual design to defraud his creditors, by making the assignment, but intended to apply his property to the payment of his debts, preferring and securing his sureties and endorsers.

This finding is equivalent, I think, to saying that the assignment was made in good faith, and without any intent to defraud creditors.

The finding is very clear, that the assignor had no such intent, which, I think, embraces good faith; for if he had no such design, it could not well be that the assignment was made in bad faith.

But if this language may not be considered as disposing of or embracing the question of good faith, the subsequent phraseology employed showed due intention to appropriate the property of the assignor to the payment of his debts, according to law, and thus manifests good faith, and rebuts the idea of any other or different presumption.

It is said that the assignment is void upon its face, for two reasons: First, because it delays the payment of creditors until the debts and demands are collected and found uncollectable.

And secondly, because it authorizes the assignee to appoint at-

torneys, one or more, under him, with full power of substitution or revocation, ratifying whatever the said attorney may do.

As to the first objection, it is urged that under the clause in the assignment containing the provision objected to, the assignee may postpone the payment of any creditor until the last dollar is collected, or until he is satisfied that the debts are uncollectable, and thus places it within the discretion of the assignee to determine when he shall pay. I think that this is not a fair and reasonable interpretation of the clause in question.

By the assignment the assignee is required to collect the debts and demands due, and to become due, " or so much of them as may be found collectable," and to dispose of the moneys received as provided for in the assignment.

I do not understand that this provision is intended to vest any discretionary power with the assignee as to the time when the debts are to be paid, but merely to provide against the necessity of collecting debts not collectable, before distribution.

It does not expressly authorize any delay, but simply exonerates the assignee from liability to account for those debts which he has been unable to collect, by reason of the insolvency of the debtors, or for any other good cause. Nor does it authorize any more discretion than can properly be exercised as to the collection of debts which are good, and which, by the terms of the assignment, he is bound to collect.

It is the usual provision inserted in assignments, more for the protection of the assignee against liability for demands against insolvent and irresponsible parties than for any other purpose.

And it would be no defence to an action brought to compel the assignee to account, that in his judgment and discretion he chose to consider certain debts uncollectable, and therefore was not ready to account.

In fact, there is no good and valid reason why an assignee would not be compelled to make a partial distribution of moneys collected, when a portion of the debts only remain unpaid, because of the doubtful character of the latter demands. Nor why he

should not sell and dispose of such demands at public sale, when the interests of the estate demand such a disposition of them.

The authorities to which we have been referred, to uphold the position taken, do not, I think, sustain any such doctrine (see Nicholson *v.* Leavitt, 6 N. Y. 510; Dunham *v* Waterman, 17 N. Y. 1; Storm *v.* Davenport, 1 Sandf. Chan. R. 135); nor does the provision in question suspend the power of the assignee to apply the estate, without delay, as required by law.

As to the second objection : The authority to appoint attorneys for the transaction of the business is not conferring power to appoint a new assignee, but simply investing the assignee with the customary authority to employ other persons to act for him, when circumstances may render it necessary, and when for good and sufficient reasons he is unable to give the business his personal supervision and attention.

The authority would doubtless exist without such a provision, but I see no objection to its insertion, for greater safety and security, in the body of the assignment. And unless some such power was given expressly, or was implied, the assignee would be without authority to appoint an attorney for some matters connected with the assignment, which he could not well attend to personally.

The objection made, that the referee erred in finding, as a conclusion of law, that the title to the property taken by the Defendant was in the Plaintiff, rests upon the facts proved, which, it is claimed, establish that the assignment was fraudulent and void, and made in bad faith, and with an intent to defraud creditors.

Preferential assignments, although tolerated by law, have always been regarded with much suspicion, and unless free from fraud and unfairness, should not be sustained.

It must be conceded that, upon the trial before the referee, the facts proved attending the change of possession, and the manner in which the business was conducted, were calculated to cast suspicion upon the transaction.

It appeared that the goods were allowed to remain in the store where they had previously been, after the assignment; that the same sign remained over the door; that the assignor continued to occupy the house without any rent being fixed; transacted the business; sold and exchanged goods; collected accounts, and used the money with the consent of the assignee.

This proof was met, on the part of the Plaintiff, by evidence that the assignor was employed and acted as agent of the assignee, who was frequently—sometimes as often as two or three times a day—at the store, consulted with the assignor, examined the books, and to whom an account was rendered of the business.

Although many of the circumstances proved furnished strong evidence of a fraudulent intent, and presented badges of fraud and circumstances of suspicion which were proper for the consideration of the referee, yet, with the accompanying explanations, they were not entirely conclusive.

So also the declarations of the assignor, which are relied upon to establish a fraudulent purpose, to this effect—that he wanted the assignment made before judgments matured, and executions issued; that he wanted to make an equal division among all his creditors, and that he did not want his property sacrificed, were to be considered by the referee, upon the question of intent, but are not entirely controlling against the validity of the assignment. The question at issue as to the delivery and change of possession of the property assigned, and the good faith of the assignor in making the assignment, without any intent to defraud creditors, as well as the question whether the assignment was made with an actual intent on the part of the assignor to prevent the sale of his property on execution, and thereby to hinder and delay, or to defraud his creditors, were questions of fact for the determination of the referee.

This Court cannot interfere with his decision in questions of facts, even if the proof is of such a character as to create some hesitation and doubt.

Certainly, in this case the facts are not so plainly and clearly

against the decision of the referee as to make it entirely manifest that a question of law alone arises.

As there was no error in the trial, the judgment must be affirmed.

All concur.

Affirmed.